UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TYSELLCROUSE, INC.,

        Plaintiff,

    v.

SWAY MANAGEMENT, LLC, et al.,

        Defendants.

Case No.  15-cv-03832-RS

**ORDER DENYING IN PART AND GRANTING IN PART MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION FOR TRIAL CONTINUANCE**

## I.  INTRODUCTION

Defendants Sway Management, LLC, Starwood Waypoint Residential Trust, Waypoint Real Estate Group, LLC, and Waypoint Homes, Inc. move for partial summary judgment and, in the event such judgment is not granted, a continuance of the trial date.  Pursuant to Civil Local Rule 7-1(b), both motions are suitable for disposition without oral argument, and the hearings set for October 13, 2016 and October 28, 2016 are hereby vacated.

This action arises from a written "Consulting Agreement" by which plaintiff TysellCrouse, Inc. undertook various activities designed to assist defendants in reducing costs in their business of acquiring, renovating, leasing, maintain, and managing single family homes.  The parties' primary dispute is how certain "incentive" payments should be calculated under their agreement. TysellCrouse argues it is owed slightly less than $1.9 million.  Defendants contend they have paid or tendered all of the amounts due pursuant to the contract, although TysellCrouse refused to accept one payment in an amount under $50,000.  A secondary dispute involves defendants'

alleged use of certain "proprietary" software provided by TysellCrouse.

The contractual provisions governing the calculation of "incentive" payments are not subject to interpretation without resort to extrinsic evidence, and conflicts in that evidence present triable issues of fact. Accordingly, defendants' motion for summary judgment on the contractual and quasi-contractual claims must be denied. Defendants have shown, however, that the state law trade secret claim is preempted, and that there is no basis for recovering attorney fees or statutory damages under the copyright claim. Those prongs of defendants' motion will therefore be granted. Additionally the motion to continue the trial date will be granted, for reasons explained below.

## II.  BACKGROUND

Based on a prior working relationship between two of the principals, in 2013 defendant Waypoint[1] began negotiating with plaintiff TysellCrouse for a consulting agreement for "purchasing and data analytics services." As noted above, TysellCrouse was to perform various tasks designed to assist Waypoint in lowering its costs.

The one-year written agreement the parties ultimately signed called for TysellCrouse to be paid $25,000 per month (later raised to $35,000) as a "Consulting Retainer." The document, drafted in an outline format rather than in a more detailed structure, also provided for TysellCrouse to receive "Incentives," specified as "7.5% of all savings (savings, rebate, co-op) per annum inclusive of all agreements negotiated by TysellCrouse." A further "bullet point" in the agreement stated: "Incentive fee baseline determined by blended average & median line items from Waypoint Homes home improvement reports through June 2013."

The crux of the parties' dispute is simple. Waypoint contends TysellCrouse is entitled to 7.5% of the savings realized *only* with respect to any and all purchasing contracts TysellCrouse

---

[1]  For purposes of this motion, the parties have not distinguished among the various entities named as defendants. For convenience, this order will refer to "Waypoint" in the singular, without prejudice to any later determination as to which defendant or defendants are potentially liable as parties to the contract or under other theories.

United States District Court
Northern District of California

1  negotiated with Waypoint's suppliers.  TysellCrouse, on the other hand, insists its incentive

2  payment should be calculated by applying the 7.5% figure to "all" the "savings" Waypoint

3  realized between its 2013 "baseline" costs and its costs the following year.[2]

4      As noted, the parties' secondary dispute relates to "proprietary" software TysellCrouse

5  allegedly provided to Waypoint.  TysellCrouse alleges that although Waypoint was authorized to

6  access and utilize the software during the term of the consulting agreement, it wrongfully copied

7  the software and continued to use it after its license to do so terminated.

8

9                           III.  LEGAL STANDARDS

10      Summary judgment is proper "if the pleadings and admissions on file, together with the

11  affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

12  party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The purpose of summary

13  judgment "is to isolate and dispose of factually unsupported claims or defenses."  *Celotex v.*

14  *Catrett*, 477 U.S. 317, 323-24 (1986).  The moving party "always bears the initial responsibility of

15  informing the district court of the basis for its motion, and identifying those portions of the

16  pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate

17  the absence of a genuine issue of material fact."  *Id*. at 323 (citations and internal quotation marks

18  omitted).  If it meets this burden, the moving party is then entitled to judgment as a matter of law

19  when the non-moving party fails to make a sufficient showing on an essential element of the case

20  with respect to which he bears the burden of proof at trial.  *Id*. at 322-23.

21

22  [2] TysellCrouse characterizes this as a "baseline to baseline" comparison.  Waypoint seizes on that

23  phrase, and argues nothing in the agreement refers to more than one "baseline."  The parties' arguments on this point risk elevating semantics over substance.  The most commonly understood

24  meaning of "baseline" is a starting point used for subsequent comparisons.  While there may be situations where one baseline (starting point) could be compared to a different baseline (an

25  alternate starting point), plainly that is not what TysellCrouse intends here by its inelegant use of the phrase "baseline to baseline."  Despite referring to the subsequent year's costs as another

26  "baseline," TysellCrouse is merely arguing that the savings should be measured by comparing all the costs of the subsequent year to that initial "baseline."  As such, the agreement's reference to

27  only one "baseline" does not weigh against the interpretation TysellCrouse is advancing.

28

CASE NO. 15-cv-03832-RS

3

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties.  To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, In*c., 477 U.S. 242, 247-48 (1986).  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc*., 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986).  It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

IV.  DISCUSSION

A.  Summary judgment

1.  Contractual claims

As noted above, the contract at issue here is drafted in an outline form that omits contextual explanation and detail. The parties' dispute centers on one "bullet point" under a bulleted sub-heading, "Incentives," which in turn appears under the heading "Fees, Compensation,

& Term."  Although both parties insist the contractual language is "unambiguous" and supports their respective and contradictory interpretations, it cannot be reasonably argued that the meaning of that bulleted phrase—"7.5% of all savings (savings, rebate, co-op) per annum inclusive of all agreements negotiated by TysellCrouse"—is so self-evident that *no* extrinsic evidence will be admissible or necessary to resolve this dispute.  Indeed, each side offers background facts, negotiation history, and similar evidence in support of their respective proffered constructions.

Waypoint argues, in essence, that it would be nonsensical and unreasonable for TysellCrouse to recover any "incentives" based on savings that did not arise from purchasing contracts it negotiated for Waypoint pursuant to the parties' consulting agreement.  Waypoint also offers examples of how, in its view, calculating purported savings from the so-called baseline could lead to "preposterous" results, given potential inconsistencies in the data as to what a "unit price" on a particular product might represent.  Waypoint further points to deposition testimony snippets that it contends reflect "admissions" by TysellCrouse that it would not be entitled to "incentives" in the absence of successfully negotiating purchasing contracts with cost savings to Waypoint.

As to the language of the disputed clause itself, Waypoint emphatically asserts it is "clear and explicit" that TysellCrouse *is* entitled to an incentive fee "on annual savings achieved because of national contracts [it] negotiated" but *is not* entitled to a fee if Waypoint does not "achieve any savings as a result of national contracts that [TysellCrouse] negotiated."  Why and how Waypoint believes the language of the clause on its face supports this argument is not evident.  The clause refers to "7.5% of *all* savings . . . . *inclusive of* all agreements negotiated by TysellCrouse." (emphases added).  However persuasive Waypoint's arguments may ultimately be that, under all the circumstances, it would make sense for TysellCrouse to earn incentive payments only for savings realized from specific contracts it negotiated, such a conclusion does not follow automatically or necessarily from the language of the agreement.

The phrase "inclusive of" is, at best ambiguous, as used here.  Waypoint is arguing, in essence, that "inclusive of" should be read to mean "including *only*."  Quite commonly, however,

the phrase is used to mean "including" the specified items *in addition to* other items.  *See*, *e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1043, (2016) ("Since the employees' claims relate only to overtime, each employee had to show he or she worked more than 40 hours a week, inclusive of time spent donning and doffing, in order to recover.")  Thus, on its face, the clause is susceptible of an interpretation that the specific reference to a percentage of saving realized from contracts negotiated by TysellCrouse was not intended to narrow the language calling for it to receive a percentage of "all savings."  As such, the language does not foreclose the possibility that "all savings" were to be calculated by comparing subsequent cost data to the initial "baseline."[3]

Under California law, "'[t]he fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting.' " *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 989 (9th Cir. 2006) (*per curiam*) (quoting *U.S. Cellular Inv. Co. of L.A. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002)).  "Because California law recognizes that the words of a written instrument often lack a clear meaning apart from the context in which the words are written, courts may preliminarily consider any extrinsic evidence offered by the parties." *Id.* at 989–90.  "'If the court decides, after consideration of this evidence, that the language of a contract, in the light of all the circumstances, is fairly susceptible of either one of the two interpretations contended for, extrinsic evidence relevant to prove either of such meanings is admissible.'" *Id.* at 990 (quoting *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33 (1968)).

Here, not only is extrinsic evidence admissible and necessary to understanding the intent of the parties, Waypoint has failed to show there are no material disputes in that evidence such that summary judgment could properly issue, notwithstanding the inherently factual nature of the

---

[3] Were TysellCrouse's only duty under the consulting agreement to negotiate supply contracts, it might be more possible to conclude that the only reasonable construction of the contract would limit incentive payments to savings arising from such contracts.  TysellCrouse, however, undertook to perform a variety of services directed at reducing costs.  While it received a significant monthly "retainer" for its work, it cannot be concluded as a matter of law that no "incentive" was intended for cost savings resulting from the more general services in addition those arising from specific supply contracts.

United States District Court
Northern District of California

1   inquiry into the parties' intent.  Waypoint attempts to avoid factual conflicts by arguing the

2   "subjective" understanding of the TysellCrouse's principals as to the meaning of the contract is

3   inadmissible.  While it is true a party's "undisclosed intent or understanding is irrelevant to

4   contract interpretation," *Founding Members of the Newport Beach Country Club v. Newport*

5   *Beach Country Club*, 109 Cal. App. 4th 944, 956 (2003), Waypoint's evidentiary objections rest

6   on its mistaken view that the consulting agreement is not even arguably susceptible to the

7   interpretation TysellCrouse is advancing.

8          It remains to be seen, on a complete factual record, and in a setting where witness

9   credibility can be weighed, whether TysellCrouse's claim that it is entitled to an "incentive" for

10  purported savings that did not arise directly from contracts it negotiated and that may or may not

11  represent actual savings is viable.  The motion for summary judgment on the claim for breach of

12  contract, and the related claims for breach of the covenant of good faith and fair dealing and

13  "unjust enrichment," however, must be denied.

14

15                  2.  Trade secret

16         TysellCrouse asserts that Waypoint's allegedly unauthorized copying and use of its

17  proprietary software constitutes both a misappropriation of trade secrets under state law, and a

18  copyright violation under federal law.  Waypoint seeks summary judgment that the state trade

19  secret claim is preempted by the Copyright Act.  *See* 17 U.S.C. § 301(a).[4]

20         The Ninth Circuit employs a two-part test to determine whether the Copyright Act

21  preempts particular state law claims.  Preemption occurs when: (1) the work at issue comes within

22  the subject matter of copyright; and (2) the rights granted under state law are equivalent to those

23

24  [4]  The statute provides: "On and after January 1, 1978, all legal or equitable rights that are
    equivalent to any of the exclusive rights within the general scope of copyright as specified by
25  section 106 in works of authorship that are fixed in a tangible medium of expression and come
    within the subject matter of copyright as specified by sections 102 and 103, whether created before
26  or after that date and whether published or unpublished, are governed exclusively by this title.
    Thereafter, no person is entitled to any such right or equivalent right in any such work under the
27  common law or statutes of any State."

28

1    protected by the Act. *See Kodadek v. MTV Networks, Inc*., 152 F.3d 1209, 1213 (9th Cir. 1998);

2    *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir .1989); *Del Madera Properties v.*

3    *Rhodes & Gardner, Inc*., 820 F.2d 973, 976 (9th Cir.1987).

4          "To survive preemption, the state cause of action must protect rights which are

5    qualitatively different from the copyright rights." *Del Madera Properties v. Rhodes & Gardner,*

6    *Inc*., 820 F.2d 973, 977 (9th Cir. 1987), overruled on other grounds by *Fogerty v. Fantasy, Inc*.,

7    510 U.S. 517 (1994)).  Critically, "[t]he state claim must have an "extra element" which changes

8    the nature of the action." *Id.*

9          Here, TysellCrouse contends its state law claim has the "extra element" of "secrecy" not

10   implicated by copyright law.  The flaw in that argument, however, is that there are no allegations

11   that Waypoint *disclosed* any such "secret" to any third party.  Rather, the gravamen of the claim is

12   that Waypoint copied and used the software for its own purposes—which is the very essence of

13   the copyright claim.  *See*, *Idema v. Dreamworks, Inc*., 162 F. Supp. 2d 1129, 1195 (C.D. Cal.

14   2001) (holding claim for *use* of alleged trade secret preempted in the absence of the "extra

15   element" of "disclosure.").  Accordingly, summary judgment is appropriate on the claim for

16   misappropriation of a trade secret, although the same basic allegations continue to support

17   TysellCrouse's claim for copyright infringement.

18

19                    3.  Statutory damages and attorney fees

20         There is no dispute that TysellCrouse did not apply to register a copyright in the software

21   at issue until August of 2015, and that the alleged acts of infringement occurred approximately one

22   year earlier.  As such, TysellCrouse may not recover either statutory damages or attorney fees.

23   See 17 U.S.C. § 412 ("no award of statutory damages or of attorney's fees . . . shall be made for . .

24   . any infringement of copyright in an unpublished work commenced before the effective date of its

25   registration.")  TysellCrouse argues that discovery may yet reveal "additional and separate

26   instances of copying" that occurred post-registration.  Discovery, however, is closed, and such

27   speculation is insufficient to create a triable issue of fact in any event.

28

CASE NO. 15-cv-03832-RS

8

*United States District Court*
*Northern District of California*

1   TysellCrouse also suggests that entitlement to statutory damages or attorney fees is not an

2   appropriate subject for summary judgment.  In the absence of any factual disputes as to the

3   viability of those remedies, however, the motion can and will be granted.

4

5

6       B.  Trial continuance

7   Waypoint moves to continue the trial, currently scheduled for December 5, 2016, on

8   grounds that its key witness, Richard Rodriguez, has been called to active duty in the Naval

9   Reserves and will not be available to testify.  Although TysellCrouse faults Waypoint for not

10  seeking the continuance at an earlier juncture, it expressly does not oppose the continuance.

11  Accordingly the current pretrial conference and trial dates are vacated.  In light of the

12  uncertainty as to the length of Mr. Rodriguez's deployment, no later than February 17, 2017 the

13  parties shall file a joint status update.  At that juncture a new trial date, or a trial setting

14  conference, will be scheduled.

15  TysellCrouse suggests that the trial continuance be conditioned on resolution of a

16  discovery dispute that it believes remains outstanding.  Neither the passing of the discovery cut off

17  nor the deadline set out in Civil Local Rule 37-3 necessarily precludes further discovery or

18  discovery motion practice, depending on prior agreements made between the parties.  Should the

19  parties have a discovery dispute they cannot resolve among themselves, however, they should

20  proceed by joint letter brief, as specified in the Case Management Scheduling Order.  The Court

21  will retain discretion to rule on the timeliness of any such brief prior to determining whether the

22  substance of the dispute should be referred to a magistrate judge for resolution.

23

24      C.  Sealing motions

25  The parties have filed three sealing motions.  As stated in the commentary to Civil Local

26  Rule 79-5, because it is a public forum, the Court has a policy of providing to the public full

27  access to documents filed here. Where sealing of certain materials is nonetheless warranted under

28

United States District Court
Northern District of California

CASE NO.  15-cv-03832-RS

United States District Court
Northern District of California

1    applicable law, the rule is designed to ensure that a redacted copy is filed and available for public

2    review that has *the minimum redactions necessary* to protect sealable information.

3          Waypoint's motion (Dkt. No. 36) seeks to seal materials designated as confidential by

4    TysellCrouse.  It does not appear TysellCrouse ever submitted a declaration in support of that

5    motion as required by Civil Local Rule 79-5 (e)(1).  TysellCrouse's motions (Dkt. Nos. 39 and 41)

6    seek sealing of some material it designated as confidential and other material designated by

7    Waypoint.  TysellCrouse did not provide a declaration explaining why the materials it designated

8    warrant sealing, and Waypoint filed no declaration regarding its materials.

9          On initial review, it appears the parties have grossly over-designated material as

10   "confidential."  Among other things, the parties will bear a heavy burden to show why any of the

11   details of the contractual arrangement between themselves warrant sealing, as it is not obvious

12   what competitive disadvantage public disclosure would cause to either side, given the nature of

13   their respective businesses.  That said, it may be that some subset of the material the parties seek

14   to seal will qualify for protection—there is, for example, some suggestion that confidentiality

15   agreements with third parties such as Home Depot may be implicated in some instances.

16         The parties are directed to meet and confer to narrow their respective sealing and redaction

17   requests to the minimum that is warranted by the law and the facts.  Within 20 days of the date of

18   this order, the parties shall submit a joint proposed order narrowly tailored to protect sealable

19   information, if any. The proposed order shall be supported by declarations from each designating

20   party establishing why the information sought to be filed under seal warrants such treatment.

21   Upon the entry of the proposed order, with any modifications made by the Court, the parties shall

22   re-file redacted versions of all affected documents with only such redactions as are authorized

23   under that order.

24

25                  V. CONCLUSION

26         Waypoint's motion for summary judgment is denied as to the claims for breach of contract,

27   breach of the covenant of good faith and fair dealing, and unjust enrichment.  The motion is

28

granted as to the state law claim for misappropriation of trade secret, and as to the claims for statutory damages and attorney fees under the Copyright Act. The pretrial conference and trial dates are vacated, with the parties to provide a status update no later than February 17, 2017. The parties are to meet and confer regarding the pending sealing motions as set out above.

**IT IS SO ORDERED**.

Dated: October 11, 2016

RICHARD SEEBORG
United States District Judge